IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ANC RENTAL CORPORATION, et al.

     Debtors

_____

ANC RENTAL CORPORATION, et al.

          Appellant                Civil Action No. 04-1430

v.

DALLAS COUNTY, ET AL.

          Appellees             Bankruptcy Case No. 01-11200

_____

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
HONORABLE MARY F. WALRATH

_____

**REPLY BRIEF OF APPELLANT ANC RENTAL CORPORATION, ET AL.**

_____

Joseph Grey (No. 2358)
Thomas G. Whalen, Jr. (No. 4034)
STEVENS & LEE, P.C.
1105 North Market Street
Seventh Floor
Wilmington, DE 19801
Telephone:  (302) 654-5180
Telecopier:  (302) 654-5181

J.M. HARRISON & ASSOCIATES
1009 C Street, Suite 200
Floresville, Texas 78114-2223
Telephone:  (830) 393-0500
Telecopier:  (830) 393-4941

ATTORNEYS FOR APPELLANTS

DATED: September 30, 2005

SL1 576520v1/011002.00003

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..................................................................................iv

Introduction ...............................................................................................1

The Subject Adversary is a Core Proceeding .......................................................2

DCAD is not Entitled To Dismissal as an Adversary Defendant............................2

DCAD's Case Authorities Confirm the Court's Remedial Authority Under §505...4

Abstention Was Inappropriate.............................................................................6

The Dallas Tax Authorities Omit Several Key Facts .............................................7

Differences in Property Types and "In Service" Dates Require Differences in
     Depreciation .........................................................................................7

ANC's Vehicles Went Into Use Very Early in Vehicle Model Years, and
     Depreciated Like, Well, Like Rental Cars Do ............................................8

Harris County Agreed Informally to the Same Adjustments Sought Here.............9

The Tax Authorities' Arguments in Favor of Equitable Abstention are
     Unpersuasive.......................................................................................11

ANC's Claims are As to a Single Rental Car Fleet and Location........................12

Questions of Texas Tax Jurisdiction and Situs are Relatively Simple.................13

No Lengthy Trial Will Be Required ....................................................................14

Various Extraneous Determinations Cited by the Tax Authorities are
     Unnecessary........................................................................................15

The Issues Were Not Too Complex for Harris County Appraisal Authorities ......16

Appellees are not Prejudiced ...........................................................................17

ANC Brought Claims Only Where Necessary ....................................................18

ii

ANC Has No "Alternate Forum" for the Claims in Question ...............................20

Conclusion ........................................................................................................21

iii

# TABLE OF AUTHORITIES

## *Cases*

*In re Blue Cactus Post,* 229 B.R. 379 (Bankr. N.D. Tex. 1998).........................4, 5

*In re Custom Distribution Services, Inc.,*  224 F.3d 235 (3rd Cir. 2000) ........10, 11

*In re Crest-Mex Corp.*, 223 B.R. 681 (Bankr. S.D. Tex. 1998) .............................4

*In re Fairchild Aircraft Corporation,* 124 B.R. 488 (Bankr. W.D. Tex. 1991)..........5

*In re Metromedia Fiber Network Inc.*, 299 B.R. 251 (Bankr. S.D. N.Y. 2003)..6, 11

## *Statutes*

28 U.S.C.A. § 157(B)(2)(A) (West 2005).................................................................... 2

28 U.S.C.A. § 157 (B)(2)(K) (West 2005)................................................................... 2

28 U.S.C.A. § 157 (B)(2)(O) (West 2005) .................................................................. 2

11 U.S.C.A. § 505 (West 2005) ......................................................... 1, 3, 4, 5, 10, 11

11 U.S.C.A. § 505 (a)(2)(A) (West 2005)................................................................. 10

Tex. Tax Code Ann. § 1.04(7) (Vernon 2001) ......................................................... 15

Tex. Tax Code Ann. § 11.01 (Vernon 2001).........................................................7, 16

SL1 576520v1/011002.00003

Tex. Tax Code Ann. § 21.01 (Vernon 2002) ...........................................................7

Tex. Tax Code Ann. § 23.01 (Vernon 2001).........................................................16

Tex. Tax Code Ann. § 23.01(a) (Vernon 2001) ................................................. 6

Tex. Tax Code Ann. § 23.01(b) (Vernon 2001) ........................................... 15

Tex. Tax Code Ann. § 23.12 (Vernon 2001)............................................... 15

Tex. Tax Code Ann. §23.011(2) (Vernon 2001) ...................................................8

SL1 576520v1/011002.00003

## Introduction

In its initial brief on appeal, ANC explained fundamental legal and analytical flaws inherent in Third Circuit caselaw relied on by Appellees, and also addressed the Bankruptcy Court's mis-application of that case law to requests for determination under Code § 505 involving unpaid taxes. Appellees largely ignored these arguments, with the Dallas Central Appraisal District arguing that it should be dismissed as a party, and Appellees generally arguing that abstention was appropriate, mainly for reasons of alleged issue complexity.

This Reply Brief will focus mainly on those arguments and explain their inaccuracies. Sequentially, ANC will first reply to the points and arguments raised in the Brief filed by Appellee Dallas Central Appraisal District ("DCAD"), followed by reply to the Brief filed by Dallas County, City of Dallas, Dallas Independent School District, Dallas County Community College District and Parkland Hospital (the last two subsumed under Dallas County, which collects taxes for them by agreement) (collectively, the "Taxing Authorities").

Concerning DCAD's brief, section C, entitled "Statement of Facts," is actually a mix of factual statements and argument. ANC does not dispute the basic bifurcated structure of Texas' property tax system, under which central appraisal districts such as DCAD are charged with establishing values which are then utilized by the local taxing units in the actual assessment of taxes against the property.

1

## The Subject Adversary is a Core Proceeding

However, this bifurcation in no way deprives the subject adversary proceeding of core status.  ANC brought the subject adversary not merely against DCAD but also against the Taxing Authorities, who were also ANC creditors as to unpaid taxes.  As to these multiple co-defendants, the subject adversary is unquestionably a "proceeding affecting the adjustment of the debtor-creditor relationship" under 28 U.S.C.A. § 157 (B)(2)(O).  In addition, because the adversary involved, in part, requests for determination of then-unpaid taxes, and because Texas property taxes are unquestionably secured by statutory liens against the property, the adversary represents, as to those assets and accounts, "determinations of the validity, extent or priority of liens" under 28 U.S.C.A. § 157 (B)(2)(K).

This secured status and inclusion of taxing unit creditors as Defendants makes the adversary a "matter concerning administration of the estate" for purposes of 28 U.S.C.A. § 157(B)(2)(A).  Finally, DCAD advanced the same argument in a prior motion to dismiss or abstain, which the court below rejected, finding the matter to be a core proceeding.  DCAD has not cross-appealed this determination.

## DCAD is not Entitled To Dismissal as an Adversary Defendant

Nor has DCAD cross-appealed the bankruptcy court's denial of its request for dismissal as a party, claiming that it is neither a necessary nor proper party to

2

the adversary proceeding. Nonetheless, DCAD attempts to re-introduce this contention under the guise of the equally-moot challenge to core proceeding status. DCAD seeks dismissal based on its limited role of appraising properties for taxation.

ANC agrees that it could obtain complete relief on its claims against the taxing units through court determination of the correct tax amounts, and accompanying orders based on those determinations. However, ANC brought the subject adversary to determine correct assessment amounts specifically based on compelling evidence that DCAD had appraised the subject assets well in excess of the appraised values required by Texas law. Any such "over-appraisal," by definition, was committed by DCAD, not the taxing units.[1] This fact alone appears to make DCAD a "proper" party to this proceeding, since it was the entity that established the values being challenged as excessive.

ANC also notes that here, as in other similar proceedings, the taxing units, while seeking dismissal or abstention on their own behalf, contested DCAD's request for dismissal, arguing that DCAD was, in fact, a necessary party to the dispute given the Appraisal District's statutory responsibility for establishing the values complained from.

This taxing unit opposition to dismissal of its own county appraisal district from this and other adversary proceedings brought under Bankruptcy Code § 505 illustrates the procedural quandary arising out of Texas' bifurcated tax system, a situation which virtually compels aggrieved taxpayers such as ANC to bring §505

---

[1] Texas law requires local tax units to assess property taxes based on the value established by

3

adversaries against both tax offices and local appraisal districts. Actions brought solely against tax offices are invariably met with a motions to dismiss for failure to join necessary parties, citing the exclusive statutory responsibility of central appraisal district, like DCAD, for determining the tax values under challenge. Alternatively, actions brought solely against central appraisal districts are challenged for failure to join the taxing units from whom the ultimate monetary adjustments were sought.

ANC's goal is simply the recovery of complete relief. DCAD's request for dismissal on these grounds has already been presented to, and rejected by, the Bankruptcy Court, without cross-appeal. Nonetheless, the specific reasoning cited by other bankruptcy courts in cases relied upon by DCAD, specifically *In re Crest-Mex Corp.*, 223 B.R. 681 (Bankr. S.D. Tex. 1998) and *In re Blue Cactus Post,* 229 B.R. 379 (Bankr. N.D. Tex. 1998) are nonetheless revealing.

### DCAD's Case Authorities Confirm the Court's Remedial Authority Under §505

As DCAD notes, the Northern District of Texas Bankruptcy Court, in *Blue Cactus Post*, faced a similar request by DCAD to be dismissed from § 505 adversary on the grounds that it was not a necessary party. The Dallas County Tax Office, much as it has in the instant case, disagreed, but the bankruptcy court granted dismissal. In so doing, the Court held, correctly, that § 505 granted U.S.

_____

the Central Appraisal District, without adjustment.

4

bankruptcy courts full authority to determine market value independent of state procedures, and that in such actions the Bankruptcy Code preempted state law and fully authorized bankruptcy courts to make the necessary determinations.

The Court also held that in such actions, the bankruptcy court essentially supplants the role of central appraisal districts. The obligation to give "full faith and credit" to the laws of the state from which the tax in question originates "applies to the substantive aspects of state law only, and not to its procedural aspects." *Id.,* 229 B.R., at 386. The Court went on to note that "[t]he power to disregard the state's procedural requirements for protesting tax liabilities under the Bankruptcy Code goes to the very heart of the necessity for the determination by the bankruptcy court under § 505. *Id.* As to alleged disruption of "uniformity of assessment," a familiar tax and appraisal office theme in efforts to dismiss § 505 proceedings, *Blue Cactus Post*, citing *In re Fairchild Aircraft Corporation,* 124 B.R. 488 (Bankr. W.D. Tex. 1991), offered a succinct rebuttal:

> The use of Section 505 to, in effect, remove only that valuation adjudication stage to the bankruptcy court is entirely consistent with the intended function of that section and does not undermine the state property taxation process.

*Blue Cactus Post,* 229 B.R., at 386, citing *In re Fairchild Aircraft Corporation*, 124 B.R., at 492.

These conclusions are not only correct, and entirely consistent with the scope and intent of Bankruptcy Code § 505, as written, but further evidence of why the bankruptcy court's dismissal here was erroneous.

5

## Abstention Was Inappropriate

DCAD's defense of abstention is unpersuasive. DCAD claims there to be no assertion by ANC that DCAD acted in violation of state law. To the contrary, ANC's pleadings specifically and unequivocally assert that the subject estate property was taxed excessively based on tax values (established by DCAD) which were well in excess of those required by Texas law. DCAD, while it may deny any excess, acknowledges having established the values in dispute. Moreover, DCAD is expressly required by Texas statutory and constitutional law to appraise property at not more than its market value. *See*, *e.g.*, Tex. Tax Code Ann. § 23.01(a). Therefore, DCAD's actions in over-assessing the subject property, by definition, violated state law.

Finally, DCAD essentially argues that ANC has failed to state a claim for relief against DCAD. However, this assertion was **also** a part of DCAD's prior Motion to Dismiss or Abstain, **also** was rejected by the Bankruptcy Court, and **also** was not cross-appealed. As to DCAD's reliance on *Metromedia Fiber Network, Inc.,* there the debtor sought to impose a generic request for relief and valuation standard (described in rather non-specific terms) across multiple states, each with their own independent appraisal and assessment systems. By contrast, here, ANC's focus is on a single rental-car fleet and related business personal property accounts in a single location, its claims for relief are tied specifically to pertinent Texas Property Tax Code provisions and the Texas valuation standard, and there is thus, no lack of precision or other factors which would in any way support

6

abstention.

## The Dallas Tax Authorities Omit Several Key Facts

The Tax Authorities' "Statement of Facts" omits several important details. First, there is the taxable "situs" facet of ANC's requested reductions, based on the fact that a number of ANC vehicles, although "speed registered" at a particular ANC location for administrative convenience, were actually physically located and rented out for the production of rental income in other counties or states outside Texas. These issues flow from two fundamental substantive law principles common to not only Texas, but most, if not all states: (1) whether or not taxable assets are being used in a given state such as to support taxable jurisdiction there; and if so, (2) the proper venue (or venues) within which the assets may validly be subjected to taxation. *See, e.g.,* Tex. Tax Code Ann. §§ 11.01 and 21.01 (Vernon 2002).

## Different Property Types and "In Service" Dates Require Different Depreciation

As to a second important element of ANC's adversary claims, depreciation, the Tax Authorities' brief characterization of this issue is misleading. Claiming that ANC seeks to have its rental vehicles "depreciated differently" from other vehicles implies that ANC is attempting to apply some unique and disparate valuation methodology inconsistent with Texas law.

In fact, just the opposite is true. Under generally accepted appraisal practices, depreciation, particularly "physical" depreciation, turns primarily on two

7

key factors: (1) when the asset is put into use and, therefore, begins physically depreciating from that use, and (2) the appropriate rate of depreciation given or the type of asset involved, the nature and intensity of use to which it is being put, and other factors relevant to the asset's "useful life."

Due to these and other considerations, analytical consistency and appraisal accuracy requires Texas appraisal authorities to adjust depreciation "start dates" and applicable depreciation rates depending on the specific assets in question. *See, e.g., id.*, §23.011(2) (requiring "appropriate" depreciation adjustments by Texas chief appraisers). In the real world, assets go into use at different dates, different types of property deteriorate at different rates, and sound appraisal methodology adjusts for these differences.

### ANC's Vehicles Went Into Use Very Early in Vehicle Model Years, and Depreciated Like, Well, Like Rental Cars Do

Here, ANC's depreciation arguments were both simple and straightforward. First, ANC argues that its new model year vehicles should begin accruing physical depreciation adjustments when they first arrive and are placed in a rental service[2] rather than on January 1 of the model year. Second, ANC argues that because the assets in question are daily rental vehicles being subjected to the rigorous use, wear and tear typical of such assets (the phrase "*don't worry, it's a rental*" is relevant here), the applicable depreciation period, the "useful life" of a typical daily rental

---

[2] Typically vehicles are placed in service with rental car companies in July or August of the year prior to the model year in question due to manufacturers' desire for early customer

8

vehicle before it is ready for rental fleet "retirement" and wholesale disposal, is demonstratively shorter than applicable to similar privately-owned vehicles.

These twin arguments indeed seek to have ANC's vehicles depreciated "differently" from other vehicles placed in service later, or which are subject to other less rigorous forms of use. However the requested treatment is entirely consistent with substantive Texas law and with generally accepted appraisal practices.

**Harris County Agreed Informally to the Same Adjustments Sought Here**

Proof of that last assertion can be found in another important factual omission from the Tax Authorities' Statement of Facts here. While acknowledging the existence of two other ANC adversary proceedings, including one filed against tax and appraisal authorities in Harris County, Texas (and in which the Tax Authority counsel here also represented several of the defendants there), the Tax Authorities fail to mention that for tax years 2002 and 2003, appraisal officials in Harris County actually **agreed** to substantial reductions in the taxable value of ANC's fleet, both by removing "speed registered" out-of-state and out-of-county vehicles from the appraisal and tax base, and by allowing earlier start dates and sharper depreciation rates on the remaining vehicles.

For tax years 2002 and 2003, Harris County appraisal officials acknowledged the validity of these adjustments at the administrative protest level, without ANC

_____

exposure and marketing.

9

even having to take their arguments to formal Appraisal Review Board hearing, let alone file a District Court Appeal. As for the adversary proceeding, covering tax year 2001 and the subject of a separate appeal, while this appeal was, ultimately, dismissed by stipulation of the parties, that agreed dismissal was in consideration for substantial reductions of over $300,000.00 in ANC's tax liability just as to the single tax year and location there at issue.

Contrary to the Tax Authority's assertion, ANC did not waive dispute as to the propriety of summary judgment as to tax years 1999 and 2000, and in fact discussed the flaws and logical inconsistencies underlying the Third Circuit decision in *In re Custom Distribution Services, Inc.*, 224 F.3d 235 (3rd Cir. 2000) underlying the court's grant of summary judgment. However, ANC simultaneously acknowledged the reality that *Custom*, flawed or not, is current Third Circuit law, and presumably governs lower court disposition of § 505 claims asserted absent full compliance with the demanding requirements of that decision.

ANC reiterates that a decision which, among other things, treated pending Bankruptcy Reform Act provisions as if already in force (*see Custom*, 224 F. 3rd, at 242[3], ignored the oft-discussed legislative intent underlying § 505 generally and the limitations embodied in § 505 (a)(2)(A), loaded the single word "proper" with more

---

[3]The Custom court cited, as alleged "further confirmation that the bankruptcy court's authority to determine refund rights are conditioned upon the debtor's compliance with the procedural requirements and limitation periods of the taxing authority," "language that was proposed in 1999 to be added to § 505(a)(2)." As it turned out, these provisions were not enacted until 2005, as to post- October 17, 2005 filings.

SL1 576520v1/011002.00003

implied (and in fact imaginary) meaning than any of the original draftsmen could have contemplated, and literally reverses the presumption of inaction and omissions underlying § 505[4], defies rational justification.   However, as the Tax Authorities make no effort in their brief to defend *Custom's* flawed reasoning, ANC stands by its original critique as included in its principal brief herein.

### The Tax Authorities' Arguments in Favor of Equitable Abstention are Unpersuasive

With respect to the court's decision to equitably abstain here, few cases could be less appropriate for that decision.   Numerous opinions have recognize that equitable abstention, in general, is a principle which should be exercised sparingly, and only where clearly warranted.   Here, virtually none of the factors typically evaluated on questions of equitable abstention support such a decision.

Appellees cite various arguments in support of their claim that the Bankruptcy Court properly abstained.   Taking these in order, ANC agrees that abstention is a viable option where "uniformity of assessment" is truly at issue, that is, where a taxpayer either seeks "special" assessment treatment through a methodology not applicable to other similar taxpayers under substantive state law or where, as the Court found in *In re Metromedia Fiber Network Inc.*, 299 B.R. 251 (Bankr. S.D. N.Y. 2003), the debtor attempted to apply a more or less generic "one size fits all" methodology across multiple state systems without adjusting for the specific

---

[4]*Custom* turns this presumption into an improbable affirmative requirement of diligence, thoroughness and timeliness on the part of these same failing companies.

11

requirements and nuances of each particular state.

### ANC's Claims are As to a Single Rental Car Fleet and Location

None of those factors is present here. ANC challenges the appraisal and assessment of a single rental car fleet and Dallas County location, and specifically pursuant to, and in strict accordance with, substantive Texas law. Each of the jurisdictional, venue and depreciation issues discussed at length hereinabove apply in like fashion to all Texas rental car companies and their rental fleet inventories. Regardless of whether central appraisal districts throughout the state consistently and accurately apply each of these factors in the context of the rigorous time and manpower constraints inherent in annual county-wide mass appraisal (or whether other rental car companies are always to challenge omissions or mis-application of these factors), the applicable law is the same for all. Uniformity of assessment is simply not an issue here.

Nor, for similar reasons, is *res judicata.* As to the other traditional abstention considerations, the Tax Authorities here attempt to exaggerate the true complexity of the issues in question. Taxation or non-taxation of vehicles administratively registered in Texas but actually based and used outside the state presents a *situs* issue arising frequently in connection with rolling stock, trucks, and other business vehicles, and which Harris County appraisal authorities found simple enough to address at the basic administrative protest stage.

**Questions of Texas Tax Jurisdiction and Situs are Relatively Simple**

While the tax authorities argue, implausibly, that ANC and this Court would be put to the daunting task of examining how rental car vehicles are valued and assessed throughout Texas and beyond in order to determine the instant questions, this argument is specious.  Whether presented in the U.S. Bankruptcy Court, or alternatively in an initial administrative protest (as was the case in Harris County), the issue for proof is the same, and it is an asset specific issue:  Is the actual location and use of the subject vehicles such as to establish a basis for jurisdiction in Texas, and, if so, in what locale.

Proof on these issues will turn on the actual location and use of ANC's vehicles, not those of other rental car companies throughout or outside Texas, as the tax authorities contend.  Likewise, legal authority on this issue will include pertinent Texas case law interpreting the relevant substantive law, but not examples (which the tax authorities may well be able to find) of other non-conforming and erroneous handling of venue and jurisdictional issues by other Texas appraisal authorities.

Appellees admit that the potential for delayed case administration is not an issue here.  Nor is the potential burden on the Court's docket, despite appellees' arguments.  Pragmatically, the only assets and accounts not subject to the erroneous, but prevailing, Third Circuit case law in *Custom Distributing* would be the single tax year 2001 account, and only a ruling on that account necessary.  While ANC cannot fully predict what extraneous issues or arguments the tax authorities

13

may seek to inject into the instant dispute, even allowing for such uncertainty, the "extensive briefing and pre-trial motions" predicted by Appellees seem highly unlikely.   At the risk of redundancy, questions of jurisdiction and situs turn on relatively objective proof of location and use of taxable property, while the issues of depreciation rates and start dates are inherent and embodied in the ultimate question of "market value" of the subject vehicles.

### No Lengthy Trial Will Be Required

Concerning alleged trial length, the Tax Authorities again attempt to mislead the Court.   Contrary to Appellees' assertion, ANC did not, and does not, ask the U.S. Bankruptcy Court "to determine the method by which the Dallas Central Appraisal District, and hence all appraising jurisdictions in Texas, determine market values in Texas."   The suggestion that this adversary proceeding seeks determinations or other relief against appraisal entities outside Dallas County is absurd.   No appraisal entities outside Dallas County are even parties to the proceeding, the Bankruptcy Court would obviously have no authority to grant relief which would bind such non-parties, and ANC has requested no such relief.  Nor do Appellees cite the Court to any ANC pleading , purported to embody such a request.

As to the relief which **is** sought against the Dallas County Appellees, ANC simply asks that the Bankruptcy Court determine, from the expert valuation testimony and other evidence to be presented, the "market value" of ANC's business personal property, primarily rental vehicles, in a single Dallas County

14

location.

This request is not one for the Bankruptcy Court to "determine the method" by which such assets are valued. The method is already established by Texas law. "Market value" is specifically defined under Tex. Tax Code Ann. § 1.04(7) (Vernon 2001), other Texas Tax Code provisions bring even greater precision to the determination of the market value of "inventory," such as the subject rental car fleet, *see, e.g., id.,* § 23.12. In addition, the Texas Tax Code generally provides that appraisal of taxable assets be carried out in accordance with "generally accepted appraisal methods and techniques" and "comply with the Uniform Standards of Professional Appraisal Practice." *Id,* § 23.01(b). These are objective standards which the bankruptcy court may take judicial notice of, and apply.

Thus, the complex and lengthy proceeding imagined by the Tax Authorities in their brief simply does not exist. The Court is being asked to do much the same thing it does in other types of valuation hearings: receive concise information on the relevant legal standard for valuation (this is already set out unambiguously in the cited Texas Tax Code provisions), receive expert testimony from both sides applying that standard and arriving at their value conclusions, weighing that testimony and determining the correct value.

### Various Extraneous Determinations Cited by the Tax Authorities are Unnecessary

As for the fifth extension factor, complexity of asset and liability structures, Appellees again conjure up imaginary issues having little relevance to the matters in

15

dispute. The number of subsidiary and related corporations is irrelevant, because this adversary dispute involves a single rental car fleet (formerly the National Rental Car fleet) at a single location. None of the vehicles in question were owned by any other co-debtor in the ANC bankruptcy.

Nor will the issues in question require the Court to address the tax treatment of ANC vehicles by other states. Texas law grants local taxing entities jurisdiction to assess taxes against business personal property where the assets are "located in the State of Texas for longer than a temporary period," "temporarily located outside Texas where the owner resides within the State," or "used continually, rather than regularly or irregularly, in the State." *Id.,* § 11.01. Vehicles falling within this definition based on their use will be subject to property taxation, at the appropriate venue according to the equally straightforward venue rules of Code § 23.01.

Conversely, vehicles not subject to such regular, ongoing use in Texas are, as a matter of substantive Texas law, not within the jurisdiction of the Texas Tax Authorities, regardless of the treatment of these issues by other states. Although such questions can be, to a degree, fact-specific, ANC's rental vehicles are essentially "fungible" units with relatively consistent patterns of use either within or in other cases outside, the State of Texas. This fungibility and consistency greatly simplifies the jurisdictional issues in question.

**The Issues Were Not Too Complex for Harris County Appraisal Authorities**

Parenthetically, were the valuation issues raised by ANC in its pleadings

16

anywhere near as daunting, complex and time-consuming as the Tax Authorities would have this Court believe, it would be impossible for Texas State Courts, much less local administrative appeal boards, to grapple with such matters in any competent fashion.   In reality, however, as earlier alluded to, Harris County appraisal officials addressed the same issues, for multiple years, resolved them satisfactorily, and at the initial protest stage, without need for even a formal administrative appraisal review board hearing, let alone appeal to Texas courts.

If in-house Harris County appraisal staff had no trouble informally addressing and resolving such issues, how can the Tax Authorities claim the same matters to be too complex, time-consuming and overwhelming for this Court.   These arguments are specious.

### Appellees are not Prejudiced

As to alleged prejudice, Appellees' argument here is mainly repetitive of earlier briefing, which persists in exaggerating the breadth and complexity of the issues at hand.  A brief example illustrates this disingenuity:

If a taxpayer challenged the appraisal of certain business assets because the appraisal office had allowed, say, only 20 percent depreciation on assets the taxpayer believed were in fact 50 percent worn out, and thus depreciated in value, would courts allow the appraisal office to refuse consideration of the taxpayer's appeal simply by arguing that the appeal called into question the valuation of **all** similar assets owned by this or other taxpayers by **any** appraisal office **throughout**

17

**the state**?

Common sense and basic considerations of equity and due process suggest not. Were it otherwise, similar arguments could be raised as to virtually any appraisal appeal. The question at issue is not one of appraisal theory, but simply one of whether or not the appraisal office correctly calculated depreciation for the specific assets in question. Challenging the accuracy of that process in one instance by one appraisal office does just that, and nothing more. In no way is such a challenge an indictment of the practices of other appraisal offices as to other assets.

For a plethora of reasons related to timing, manpower and other constraints, some "mass appraisal" valuations are determined more accurately than others. The right to challenge inaccuracies in this process is fundamental, and should not subject taxpayers to threshold rhetorical hyperbole painting the appeal as a global challenge to the entire appraisal system.

### ANC Brought Claims Only Where Necessary

Moreover, while the Tax Authorities make much of the fact that ANC raised similar arguments in two other counties, in fact Debtors owned taxable vehicles during the subject tax year in numerous Texas counties, yet brought adversary proceedings in only three. In Harris County, where the same issues had been addressed administratively and informally for prior years, the taxing unit's claims were ultimately reduced, and the adversary proceeding, which raised similar issues,

18

ultimately settled and dismissed by agreement.

Out of more than a dozen Texas counties, only Dallas and Tarrant Counties remain in dispute, and this despite the fact that appraisal litigation over the valuation of these same assets for subsequent years was settled through negotiation. Here, ANC indeed asserts that the appraisal offices in each of those two counties under-allowed for depreciation on ANC's airport rental car fleet. This single, focused issue speaks for itself. It challenges appraisal office calculation of depreciation, a fundamental component and consideration in the valuation of movable personal property which is, through use, subject to progressive physical deterioration and wasting. Arguments that the appraisal office under-allowed on depreciation are just that, not challenges to the integrity of the entire Texas appraisal system, as Appellees suggest.

Similarly, the question regarding vehicles operated out-of-state is not an uncommon one. ANC operates rental vehicles in a large number of states, as do other large rental car companies, interstate trucking companies, and a variety of other taxpayer owners and operators of taxable *"mobilia."* *Mobilia* not used within Texas such as to establish taxing jurisdiction there are not taxable in Texas. This rule is fundamental. Appraisal jurisdiction extends generally to business personal property being used for the production of income, not to such property used exclusively in other states.

SL1 576520v1/011002.00003

### ANC Has No "Alternate Forum" for the Claims in Question

Finally, ANC, contrary to Appellees' claims, has no "alternate forum" in Texas State Courts in which to pursue these claims for the tax year at issue. Although property tax issues concerning later years were, in fact, litigated and subsequently settled, ANC's current ad valorem tax consultants and the undersigned counsel were not engaged by Debtors in time to identify and preserve such issues for administrative and/or judicial challenge in Texas until after applicable 2001 deadlines had expired. Correction of the subject appraisal excesses by the U.S. Bankruptcy Court is, in fact, the only available procedural option.

## Conclusion

WHEREFORE, premises considered, Debtors and Appellants ANC Rental Corporation, et. al., pray that upon due consideration of its appeal herein, that the Court reverse and remand this proceeding to the U.S. Bankruptcy Court for the District of Delaware to address the subject valuation issues on their merits.

Dated:  September 30, 2005

STEVENS & LEE, P.C.

Joseph Grey (No. 2358)
Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street, Seventh Floor
Wilmington, DE 19801
Telephone: (302) 654-5180
Telecopier: (302) 654-5181

Joseph M. Harrison IV
J.M. HARRISON & ASSOCIATES
1009 C Street, Suite 200
Floresville, Texas 78114-2223
Telephone: (830) 393-0500
Telecopier: (830) 393-04941
ATTORNEYS FOR APPELLANTS